IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Martha L. Thompson, | ) | C/A No.: 0:13-1889-JFA-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Rock Hill School District III and Robert Beck, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

In this employment discrimination case, Martha L. Thompson ("Plaintiff"), proceeding pro se and in forma pauperis, sues her former employer, Rock Hill School District III ("District") and her direct supervisor, Robert Beck ("Mr. Beck") (collectively "Defendants"). Plaintiff alleges discrimination on the basis of age, sex, and race. [Entry #1 at 5]. The undersigned construes Plaintiff's claims as brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.* ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"), which forbids an employer from taking an adverse employment action against an employee "because of" the employee's age. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 283 (4th Cir. 2004) (en banc). This matter comes before the court on Defendants' motion for summary judgment filed on May 30, 2014. [Entry #36]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if she failed to respond

adequately to Defendants' motion. [Entry #37]. The motion having been fully briefed [Entry #39, #41], it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court grant Defendants' motion for summary judgment.

I.     Factual and Procedural Background

Plaintiff was terminated nine days after she was officially hired as a school bus aide on September 17, 2012. The District's Transportation Support Associate, Naomi Cauthen, participated in Plaintiff's initial interview with Mr. White and signed Plaintiff's hiring documents. [Entry # 36-4 (Employee Status Form); Pl.'s Depo.[1] at 38–42; Cauthen Aff. ¶ 3 (Cauthen's Affidavit is Entry #36-2)]. Ms. Cauthen also reviewed Plaintiff's job duties with her upon her hire. [Cauthen Aff. ¶ 4].

The job description for a school bus aide includes the following: (1) assisting school bus drivers in the transportation of all students riders, including physically and/or emotionally handicapped passengers, (2) assisting the driver in maintaining proper student control on the bus at all times, (3) being physically and emotionally able to cope with situations and problems encountered when transporting passengers in ambulatory

---

[1] Excerpts of Plaintiff's deposition are in the record at Entry #36-3.

appliances, restraint systems, and with difficult behavior, and (4) performing other duties as assigned. [*Id.*, Entry #36-5 (District's Bus Aide Job Description)].

The events leading to Plaintiff's termination occurred on September 25, 2012, when Plaintiff was assigned as a bus aide to bus driver Elaine Russell. [Pl.'s Depo. 47–48]. Plaintiff boarded Ms. Russell's bus, but refused to assist a student with a disability who was on the bus. *Id.* at 47–49. Plaintiff left the school bus and informed Mr. Beck, the school bus dispatcher, that she was giving up and would not perform her duties on Ms. Russell's bus. *Id.* at 49. Mr. Beck then informed Ms. Cauthen that Plaintiff refused to perform her duties. [Cauthen Aff. ¶ 6].

The next day, September 26, 2012, Ms. Cauthen and Derek Owens, another one of the District's Transportation Support Associates, met with Plaintiff. [Cauthen Aff. ¶ 7]. They reviewed Plaintiff's job duties with her and confirmed that she refused to perform her job duties as a school bus aide. *Id.* Ms. Cauthen informed Plaintiff that she was being terminated for insubordination because of her refusal to perform her assignment on Ms. Russell's bus. [Pl. Depo. 55–56]. The District's personnel director, Rebecca Partlow, sent Plaintiff a letter confirming her termination. [Cauthen Aff. ¶ 8; Entry #36-8 (termination letter)]. The termination letter provided as follows:

> This letter confirms my receipt of notification from Mrs. Naomi Cauthen, Transportation Associate, recommending your dismissal as of September 26, 2012. The recommendation was based on your refusal to accept an assignment as a bus aide on a different bus because you felt that you could not handle one of the students who rides on the bus. Your being able to maintain proper control of students on the bus at all times is part of your job description, and your not accepting an assignment made by a supervisor is considered deliberate failure to do your job.

3

> Thus, as of September 26, 2012, you are being discharged from your job as a bus aide for insubordination. Ms. Thompson, I regret this action has to be taken. It is my hope that you are successful in future endeavors.

[Entry #36-8].

At the time of Plaintiff's termination, the District employed seven black female school bus aides and three or four white female school bus aides.[2] [Cauthen Aff. ¶ 9; Entry #36-9 (Employee Roster)]. Ms. Cauthen hired Tekeemia Jamerson, an African-American female, as a school bus aide on February 4, 2013, to replace Plaintiff. [Cauthen Aff. ¶ 10]. Ms. Jamerson was the first bus aide hired by the District after Ms. Thompson's termination. [Cauthen Aff. ¶ 10].

### B. Plaintiff's Discrimination Claims

Plaintiff alleges Defendants discriminated against her because of her age, sex, and race. Although the record does not reflect a copy of Plaintiff's charge filed with the Equal Employment Opportunity Commission ("EEOC"), Plaintiff attached to her complaint a copy of the EEOC's Dismissal and Notice of Rights dated April 22, 2013, which reflects that the EEOC investigated Plaintiff's charge with respect to Title VII, the Americans with Disabilities Act ("ADA"), the Genetic Information Nondiscrimination Act ("GINA"), and the ADEA. [Entry #1-2]. Defendants have not contested that Plaintiff has exhausted her administrative remedies with respect to her claims for age, sex, and race.

---

[2] Ms. Cauthen's affidavit notes there were three white female school bus aides, but the Employee Roster appears to indicate there were four white female school bus aides (Burton, Heidenesc[], Lovell, and Summerlin). [Entry #36-9]. This discrepancy is not a relevant factual dispute for the purposes of Fed. R. Civ. P. 56.

4

As an initial matter, Plaintiff's purported discrimination claims against Mr. Beck are specifically barred by *Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177 (4th Cir. 1998) ("An analysis of Title VII's language and its remedial scheme leads us to join the other circuit courts and conclude that supervisors are not liable in their individual capacities for Title VII violations"); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507 (4th Cir. 1994) (holding ADEA limits civil liability to the employer and that supervisor is not a proper defendant).  Therefore, the court should dismiss Mr. Beck from this action for failure to state a claim. For the reasons that follow, the court should also grant the District's motion for summary judgment.

II.     Discussion

    A.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . .

that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

B.     Analysis

In claims brought under Title VII and the ADEA, absent direct evidence of discrimination, as is the case here, Plaintiff may prove her allegations under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. Under *McDonnell Douglas*, Plaintiff first must establish by a preponderance of evidence each element of her prima facie case of discrimination. *Id.* at 802.

To state a prima facie case of race and sex discrimination, Plaintiff must demonstrate: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by a similarly-qualified applicant outside of the protected class. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004).

6

To state a prima facie case of age discrimination, Plaintiff must demonstrate: (1) she was a member of the protected class—that is, older than 40; (2) she was discharged; (3) she was qualified for the job and met her employer's legitimate expectations; and (4) her position remained open or was filled by a similarly-qualified individual who was substantially younger. *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 513 (4th Cir. 2006).

If Plaintiff establishes a prima facie case, the burden shifts to the District to produce a legitimate, nondiscriminatory reason for its termination decision. *Id.* This is merely a burden of production, not of persuasion. *St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 506 (1993).

Once the District meets its burden by producing a legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination *vel non.*" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citing *Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)).  In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by the District is not its true reason, but was pretext for discrimination. *Reeves*, 530 U.S. at 143. Throughout the burden-shifting scheme set forth in *McDonnell Douglas*, the ultimate burden of proving that the District intentionally discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude the District intentionally discriminated against her.

1.    Plaintiff has failed to establish a prima facie case

The District argues that Plaintiff has failed to establish a prima facie case of discrimination based on her race, sex, or age. As an African-American female over forty who was terminated, Plaintiff meets the first and second elements of the prima facie case. The District argues, however, that Plaintiff has failed to establish the third and fourth elements. The undersigned agrees.

a.    Plaintiff was not meeting the District's expectations

To meet the third element of the prima facie case, Plaintiff must proffer evidence that "she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action." *Miles v. Dell, Inc.*, 429 F.3d 480, 485 (4th Cir. 2005). The Fourth Circuit has clarified as to the third element, "a plaintiff must show by a preponderance of the evidence that he met the employer's legitimate job expectations in order to prove his prima facie case, [and] the employer may counter with evidence defining the expectations as well as evidence that the employee was not meeting those expectations." *Warch*, 435 F.3d at 516. The court has qualified this requirement by clarifying that the plaintiff's burden is not an onerous one, requiring only that the plaintiff present evidence to create a question of fact that the employer's "proffered 'expectation' is not, in fact, legitimate at all." *Id.* at 517.

Although Plaintiff's burden with respect to the third prong is not onerous, the court still requires evidence other than Plaintiff's "own self-serving conclusions" that she met the District's legitimate expectations. Moreover, Plaintiff cannot simply claim that she was meeting expectations without providing any additional evidence. As the Fourth

8

Circuit has explained, Plaintiff's own "subjective self-assessments . . . are not sufficient to sustain her burden of showing that she was meeting . . . legitimate expectations." *Horne v. Reznick Fedder & Silverman*, 154 Fed. App'x 361, 363 (4th Cir. 2005); *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996) ("'It is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff.") (quoting *Smith v. Flax* 618 F.2d 1062, 1067 (4th Cir.1980))).

The District alleges that Plaintiff was not performing her job duties as a school bus aide at a level that met the District's legitimate expectations at the time of her termination. [Cauthen Aff. ¶¶ 4, 5, 7; Entry #36-8 (termination letter)]. The District argues that Plaintiff failed to perform her job duties, which included, *inter alia*, (1) assisting school bus drivers in the transportation of all students riders, including physically and/or emotionally handicapped passengers, (2) assisting the driver in maintaining proper student control on the bus at all times, (3) being physically and emotionally able to cope with situations and problems encountered when transporting passengers in ambulatory appliances, restraint systems, and with difficult behavior, and (4) performing other duties as assigned.  The District notes that Plaintiff refused to perform her job duties on Ms. Russell's school bus.  Plaintiff herself admitted in her deposition that she gave up on her job duties and got off the bus. [Pl. Depo. at 49].  Based upon the evidence presented, Plaintiff fails to show that she was performing her job duties at a level that met the District's legitimate expectations at the time of the adverse employment action.

9

     b.  Plaintiff was replaced by an individual in her protected class

Even if Plaintiff were to satisfy the third element, she cannot meet the fourth element of the prima facie case—that she was replaced by someone outside of her protected class.

The District has provided undisputed evidence that Plaintiff was replaced with Ms. Jamerson, an African-American female, thereby a member of Plaintiff's protected class of race and sex.  [Cauthen Aff. ¶ 10]. Plaintiff has failed to offer any evidence to suggest that Ms. Jamerson is substantially younger.  *See Hill v. Southeastern Freight Lines, Inc.*, 523 Fed. Appx. 213, 217 (4th Cir. 2013) ("[plaintiff] offers no evidence whatsoever to even suggest that his replacement is substantially younger. . . . [Plaintiff] simply has offered no evidence relevant to this fourth element, underscoring the lack of connection between [defendant]'s adverse employment decision and any implication, however remote, of age discrimination.").

Plaintiff alleges that the District hired the replacement "only after it became aware that the Plaintiff was in the process of bringing legal action against the District," in an "attempt to cover up intentional discrimination."  [Entry #39 at 6].  The undersigned notes that the District hired Plaintiff's replacement on February 4, 2013, some seven weeks prior to Plaintiff's filing of her charge.  Plaintiff has not provided any evidence that the District was aware in February 2013 that she would be claiming discrimination from her nine-day employment stint four months earlier. *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) ("neither unsupported speculation, nor evidence that is merely colorable or not significantly probative will

10

suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that reasonable minds could differ on a material point, then, regardless of any proof or evidentiary requirements imposed by the substantive law, summary judgment, if appropriate, shall be entered.") (internal citations omitted).

Because Plaintiff has not established the third and fourth elements of a Title VII or ADEA claim of discriminatory termination, her prima facie case fails, and the District is entitled to summary judgment.

 2. The District has provided legitimate, non-discriminatory reasons for terminating Plaintiff

Even if Plaintiff were to establish a prima facie case of discrimination, the District still may rebut that case by showing it had legitimate, non-discriminatory reasons to terminate Plaintiff. *See McDonnell Douglas*, 411 U.S. at 802. The District only has the burden of production, not of persuasion. *Burdine*, 450 U.S. at 254. As explained above, the District has met this burden, because it has stated that it terminated Plaintiff because she failed to perform her job duties by refusing to accept an assignment on Ms. Russell's bus because she felt she could not handle one of the student riders.

 3. Plaintiff has failed to prove that the District's reasons were pretext

Because the District has articulated a legitimate non-discriminatory for terminating Plaintiff, the burden shifts to Plaintiff to show that the District's reason is pretextual.

An employment discrimination plaintiff may establish pretext by proving that employer's explanation for employment decision is unworthy of credence or that

11

employer's explanation is false. *Id.* In appropriate circumstances, the trier of fact can reasonably infer from falsity of explanation that employer is dissembling to cover up discriminatory purpose. *Id.*

In her response, Plaintiff complains of a variety of matters during her handful of days that she worked for the District, including her alleged strained relationship with Ms. Cauthen, Plaintiff's confusion regarding to whom she was to report or from who to receive directions, and Plaintiff's perceived failure to be trained for the position. [Entry #39 at 1–2]. She states that she reported for work and fulfilled her duties on September 18 and 19 on Ms. Hunt's bus. *Id.* at 2. She states that when she reported for work on September 22, Ms. Hunt told her she did not need her and took her to Ms. Russell's bus, where Ms. Russell and another bus aide were struggling to place a harness on an unruly student. *Id.* Plaintiff states that once the student was placed in a harness, Plaintiff was told to hold onto the harness to control the student. *Id.* Plaintiff noted that the student was large, very strong, and very aggressive, that he jerked her from place to place on the bus, and that he knocked out two windows. *Id.* Plaintiff stated that no bus aide could control this student by herself and that she was afraid for her safety because of the student's behavior. *Id.*

The following day, September 23, 2012, Plaintiff reported to work and Ms. Hunt again told her she did not need her and took her to Ms. Russell's bus, where Plaintiff was told to place the harness on the unruly student by herself. *Id.* at 2–3. Plaintiff states that she went to the office to inform Mr. Beck of the situation and that he allegedly refused to

12

talk to her, although she states that he accused her of being insubordinate and reported to Ms. Cauthen that Plaintiff refused to accept her bus assignment. *Id.* at 3.

Plaintiff states that on September 24 and 25, she was assigned to ride with Ms. Hunt, but that Ms. Hunt left the lot before Plaintiff arrived at the bus. *Id.* Plaintiff alleges that Mr. Beck "was made aware of this situation but took no corrective action," and that he allegedly refused to talk to her when she approached him. *Id.*

Plaintiff states that on September 26, 2012, she was terminated for refusal to accept an assignment as a bus aide. *Id.* She complains that no one in transportation talked with her about the uncontrollable student or her safety when trying to control him. *Id.*

Plaintiff alleges that she was not instructed on how to perform the tasks listed in the job description. *Id.* She says, "[b]asically the Plaintiff was put on a job and not provided any instructions on how to perform the job because Ms. Cauthen resented that Mr. White hired the Plaintiff."[3] *Id.* at 4.

---

[3] The District notes that Plaintiff testified in her deposition that she was hired by Ms. Cauthen [Pl. Depo. at 38, 41], and signed an at-will employment agreement and reviewed her job duties in a meeting with Ms. Cauthen, some seven weeks after Mr. White had passed away. [Entry #39 at 4, 6; Entry #41-1 (White obituary)]. The District argues the court should apply the inference in *Proud v. Stone*, 945 F.2d 796 (4th Cir. 1991), that where the individual making the employment and termination decisions is the same person and the termination occurs within a relatively short time period following the hiring, a strong inference exists that discrimination was not the reason for the adverse action taken by the employer. *Id.* at 797. Viewing the facts and inferences in the light most favorable to Plaintiff as the non-movant, because Plaintiff has stated that she was initially interviewed by Mr. White and that he was who hired her, the court respectfully declines to apply the *Proud v. Stone* inference.

Plaintiff also complains that her supervisor "did not cover any guidelines defining behaviors that are regarded as insubordination during orientation." *Id.* at 4. She also suggests that the Occupational Safety and Health Administration protects workers who refuse to perform work if the employee believes in good faith that performing the work would put the employee in imminent danger, and that an employee's refusal to do something that is illegal, unethical, or a violation of company policy would not be considered insubordination.

Even accepting as true all of Plaintiff's foregoing allegations, it is undisputed that Plaintiff refused to perform the bus aide duties on Ms. Russell's bus as directed. Plaintiff has failed to establish pretext because she has not demonstrated that the District's explanation for terminating her is unworthy of credence or otherwise false. Plaintiff's responsibilities as a bus aide specifically required her to assist the bus drivers in transporting physically and/or emotionally handicapped passengers, in maintaining proper student control on the bus, being physically and emotionally able to cope with situations and problems encountered when transporting passengers in ambulatory appliances, restraint systems, and with difficult behavior, and performing other duties as assigned. Plaintiff's argument appears to be that she was not qualified to perform the duties of the job for which she was hired. Plaintiff's argument does not satisfy the *McDonnell Douglas* analysis such that her discrimination claims can survive summary judgment.

While Plaintiff may disagree with the District's assessment and decision to terminate her, "Title VII is not a vehicle for substituting the judgment of a court for that

14

of the employer." *Jiminez v. Mary Washington College*, 57 F.3d 369, 377 (4th Cir. 1995). Courts do not sit as "super personnel departments second guessing an employer's perceptions of an employee's qualifications." *Malghan v. Evans*, 118 Fed. Appx. 731 (4th Cir. 2004) (internal citations omitted). In fact, "the law does not require an employer to make, in the first instance, employment choices that are wise, rational, or even well-considered, as long as they are nondiscriminatory." *Id.* (internal citations omitted). Plaintiff testified that she gave up on her job duties and got off the bus. [Pl. Depo. at 49]. Further, Plaintiff has presented no evidence that the District's decision to terminate her was other than because it believed she refused to accept her assignment as a bus aide on Ms. Russell's bus.

Even if Plaintiff disagrees with the District's decision to terminate her, there is no evidence that the District's management, as the decisionmakers, did not honestly believe and rely on their good faith belief that Plaintiff had refused to accept her bus aide assignment. Plaintiff has no evidence to cast doubt on this legitimate, non-retaliatory reason for his discharge.

> The court's only concern is
>
> whether the reason for which the defendant discharged the plaintiff was discriminatory. Thus, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.

*DeJarnette v. Corning Inc.*, 133 F.3d 293 (4th Cir. 1998) (internal citations omitted).

Plaintiff attempts to show that the District's nondiscriminatory reasons for her termination are pretextual by relying on her own opinion, but has not shown any evidence

15

beyond her own speculation. Plaintiff has failed to demonstrate as a reasonable probability that the District's belief was either false or pretextual for discrimination. *DeJarnette,* 133 F.3d at 299 (employee must present evidence reasonably calling into question the honesty of his employer's belief; employee's mere demonstration that his employer's belief may be incorrect is not sufficient to prove discrimination).

In sum, nothing in the evidence or arguments presented rebuts the District's legitimate reason for terminating Plaintiff. Plaintiff has failed to provide any evidence that race, sex, or age discrimination was the real reason for her termination instead of the reasons the District proffered. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000) (noting it is not enough to disbelieve the defendant—a factfinder must believe plaintiff's explanation of intentional race discrimination). There is no evidence from which a reasonable jury could conclude Plaintiff is entitled to a verdict. Therefore, the undersigned submits that Defendants are entitled to summary judgment on Plaintiff's Title VII and ADEA claims for race, sex, and age discrimination.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendants' motion for summary judgment [Entry #36] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

August 27, 2014                                  Shiva V. Hodges
Columbia, South Carolina                         United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).